IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCEDES M. HARRISON, | No. C 04-3033 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff appeals the denial of her application for social security disability benefits.

## I. BACKGROUND

**A. Procedural history**

Plaintiff Mercedes Harrison filed an application for Social Security disability benefits on July 6, 2001 alleging that she became disabled on June 6, 2000 due to left-sided pain, weakness and numbness in her left fingers and arm, neck, shoulder, and leg. Following denial of her application, plaintiff had an administrative hearing before an administrative law judge ("the ALJ"). The ALJ found that plaintiff is not disabled because she can perform her past relevant work. The Appeals Council affirmed the ALJ and this lawsuit followed.

**B. The administrative record**

**1. Plaintiff's education and work experience**

Plaintiff is a high school graduate with two years of college, but no college degree.

She has approximately 19 years experience as a computer systems engineer, systems administrator, computer support technician, systems analyst, and database administrator.

**2.     Plaintiff's medical history**

Plaintiff awoke on the morning of June 6, 2000 with swelling in her left hand and numbness in her left arm. She also had a black eye and a cut under her eye, but she does not know what happened. (TR 159, 161, 188) Shortly thereafter she was seen by physicians at Kaiser Permanente where she presented with marked pain and weakness in her left arm and hand. (TR 158-161) A June 16, 2000, CT scan of her head was normal. (TR 166) During that month she was seen several times in urgent care complaining of left hand and arm pain and swelling. (TR 154) One physician noted that plaintiff was unable to bend her finger. (TR 156) Her physicians believed she may have a cervical radiculopathy (pinched nerve). (TR 155, 156) A neurology consult did not reveal any neurological problems. (TR 160)

Plaintiff was seen at Alta Bates -Summit Medical Center on August 2, 2000 by Dr. C. Whitmore. (TR 191) Plaintiff told Dr. Whitmore that she was not sleeping well and felt imbalanced. She again reported cramping and stabbing pain in her left hand, especially her fourth and fifth digits. (Id.) In October she saw a neurologist who did not have any explanation for plaintiff's symptoms and stated that she did not have anything to offer plaintiff as far as neurological assessment or treatment. (TR 172, 189) A cervical, spine and brain MRI were all negative. (TR 145, 189) An EMG study found that there "is no evidence for nerve injury from entrapment neuropathy, brachial plexopathy or cervical radiculopathy affecting the left arm." (TR 174) She was referred for occupational and physical therapy. (TR 189)

Plaintiff saw Dr. Whitmore again in April 2001. Dr. Whitmore diagnosed plaintiff with tendonitis/bursitis and prescribed motrin and physical therapy. She also recommended that plaintiff work another month until she is released by orthopedics. (TR 187) X-rays of plaintiff's left shoulder, humerus and hand taken that same month were all normal. (TR 176-77) Plaintiff followed up with Dr. Whitmore in June 2001. She again complained of left-side weakness and pain, but was having some success with physical therapy. Dr. Whitmore's

2

notes state that plaintiff is now diagnosed with neurovascular entrapment syndrome and that the physical therapist believes that plaintiff could be back to work in three months.  (TR 187)

Dr. Oscar Espinas completed a Functional Capacity Evaluation for plaintiff on August 17, 2001.  Dr. Espinas recommended that plaintiff return to work in a sedentary work capacity-part time, light duty, lifting no more than 20 pounds.  In November 2001, Dr. Whitmore agreed with the evaluation, and stated that the light duty should extend for 2-3 months as a form of vocational rehabilitation.  (TR 179)   She concluded her letter by stating that she hoped plaintiff's reintroduction to the workforce will aid in her "recovery from her illusive syndrome."  (Id.)

In January 2003, plaintiff saw nurse practitioner Ronces Reyes-Pugay complaining of left arm pain.  Reyes-Pugay found 5/5 left and right arm motor strength, 5/5 grip strength, 5/5 shoulder strength, normal reflexes, steady gait, and instact sensation.  (TR 215)   Later that year plaintiff began being seen at the Alameda County Medical Center where she was diagnosed with fibrolmyalgia.  (TR 216-226).  A September 2003 spinal cervical MRI found "[q]uestionable central 1-2 mm herniation, but no cord impingement.  (TR 233).

### 3. Hearing testimony

Plaintiff testified that she can keyboard at a computer for only 15 to 20 minutes before she starts experiencing pain in her shoulders, neck and hands, so she generally avoids keyboarding.  She further stated that she can sit and concentrate on a screen, such as a computer screen, for about 30 to 45 minutes before she has to change positions.  Plaintiff explained that she might be able to work a day or two a week, but that she could not work full time because it takes her a day or two to recover when she does too much.

A vocational expert also gave testimony.  Based on a hypothetical posed by the ALJ, the expert opined that the individual could not perform plaintiff's past relevant work.

## II. THE ALJ'S DECISION

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry.  20 C.F.R. § 416.920.  At the first step, the ALJ considers if the claimant is engaged in substantial gainful activity; if the claimant is not engaged in substantial gainful

3

activity, the second step asks if the claimant has a severe impairment (i.e. an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step asks if the claimant is capable of performing his past relevant work; if the claimant is not capable of performing his past relevant work, the fifth step asks if the claimant is capable of performing other work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

Here, the ALJ found that plaintiff had not been engaged in substantial gainful activity. He next determined that plaintiff suffers from a medically determinable disorder of the muscles, ligament as fascia, and that the impairment is severe. He also found that her alleged depression is not a severe impairment. At step 3, he found plaintiff does not suffer from an impairment which meets or equals the conditions outlined in the Listing of Impairments. Finally, the ALJ found plaintiff could perform her past relevant work and therefore was not entitled to benefits.

The ALJ based his finding on the lack of any objective evidence of a medical condition as all of plaintiff's tests and scans were negative. He also found that plaintiff's physical examinations showed only inconsistent or intermittent findings of left extremity weakness, and that her complaints simply do not make sense. The ALJ rejected the opinions of Dr. Whitmore, plaintiff's treating physician and Dr. Espinas, both on the ground that their opinions were not supported by medically acceptable clinical and laboratory techniques and are at variance with the record as a whole. The ALJ also found plaintiff's statements not credible.

### III. STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if

4

it is not supported by substantial evidence or if the decision is based on legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040.

Plaintiff bears the burden of establishing that the ALJ's decision was not based on substantial evidence or that the ALJ's decision was based on legal error. See generally Andrews, 53 F.3d at 1039; Magallenes, 881 F.2d at 750.

## IV. DISCUSSION

### A. Residual Functional Capacity

The ALJ found that plaintiff could perform "light" work and therefore could perform her sedentary past relevant work. Plaintiff challenges this finding, and, in particular, the ALJ's rejection of the limitations set forth by her treating physician and his refusal to consider the opinions of two of plaintiff's physical therapists. She also complains about his rejection of her own testimony as to her pain and abilities.

#### 1. Rejection of physicians' opinions

In November 2001, Dr. Whitmore wrote plaintiff's disability insurer carrier: "I agree with the Functional Capacity Evaluation performed on August 17, 2001 and the recommendation that Mrs. Harrison return to work in a sedentary work capacity-part time, light duty, lifting no more than 20 pounds." (TR 179) Attached to the letter was the Functional Capacity Evaluation which had been completed by Dr. Espinas. (TR 180-81) The ALJ rejected both physicians' opinions.

Ninth Circuit social security caselaw distinguishes among three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not

5

treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." See Magallenes, 881 F.2d at 751 (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)). "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830. "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Id.

When the opinion of a plaintiff's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict. See Magallenes, 881 F.2d at 751; see also Batson v. Commissioner of Social Security, 359 F.3d 1190, 1193 (9th Cir. 2004 (holding that "[w]hen the evidence before the ALJ is subject to more than one rational interpretation," the court must defer to the ALJ). The Ninth Circuit has consistently held that "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." Magallenes, 881 F.2d at 750; see also Allen v. Heckler, 749 F.2d 577, 580 n.1 (9th Cir. 1985) ("questions of credibility and resolutions of conflicts in the testimony are functions solely for the Secretary"). The ALJ's credibility assessment of a plaintiff's testimony also impacts upon the weight given to a treating physician's opinion: when an ALJ properly discounts the plaintiff's subjective complaints, the ALJ may properly disregard the opinion of a treating physician which is premised upon those complaints. See Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Here, the ALJ's rejection of Dr. Whitmore's opinion was not erroneous. The ALJ properly determined that Dr. Whitmore's November 2001 opinion was contradicted by her

other findings; namely, her October 2000 finding of 4/5 left upper extremity strength with questionable effort, (TR 190), and her September 2002 statement that plaintiff "is convinced there is medical problem despite intensive negative work-up," and that the onset of her condition is not consistent with "a physical etiology and that she [Dr. Whitmore] has tried to convince [plaintiff] to see a psychiatrist to get at the cause." (TR 124)  In other words, Dr. Whitmore offered no explanation for her November 2001 opinion in light of her finding that there is no objective medical evidence to support plaintiff's complaints.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (concluding that substantial evidence supported the ALJ's determination that the claimant was not disabled where "numerous medical examinations failed to disclose any underlying medical cause of the ailments of which [the claimant] complained").  Indeed, in the same letter in which Dr. Whitmore adopted the Functional Capacity Evaluation performed by Dr. Espinas, Dr. Whitmore repeated that plaintiff's syndrome is "illusive." (TR 179)

      Dr. Whitmore's November 2001 opinion was also inconsistent with other medical evidence in the record.  In January 2003, nurse practitioner Reyes-Pugay examined plaintiff and found 5/5 left and right arm motor strength, 5/5 grip strength, 5/5 shoulder strength, normal reflexes, steady gait, and intact sensation. (TR 215)  And, as Dr. Whitmore herself noted, all of plaintiff's laboratory tests, x-rays and scans have been negative.  Dr. Whitmore's opinion was also contradicted by Camille Williams, M.D., a non-examining State agency physician.  Dr. Williams reviewed the medical records and concluded in October 2001 that plaintiff could perform light work.  See Saelee, 94 F.3d at 522 (holding that the findings of a non-examining physician can amount to substantial evidence as long as other evidence in the record supports those findings).

      Finally, the ALJ properly determined plaintiff was not credible (see section A(2) below).  Therefore, to the extent that Dr. Whitmore's November 2001 opinion was premised on plaintiff's self-reported symptoms, the ALJ could properly discount the opinion of Dr. Whitmore.

7

Plaintiff also challenges the ALJ's rejection of Dr. Espinas's Functional Capacity Evaluation. This, too, was not error. Dr. Espinas did not examine plaintiff. See TR 181 ("This evaluation is based solely upon the clinical evaluations, objective medical evidence and diagnostic test results in the medical records at the time this form was completed. The reviewer did not examine the patient"). He offers no explanation for how he developed his opinion despite plaintiff's "intensive negative work up." (TR 124)

Given the apparent inconsistencies between Dr. Whitmore's various opinions, as well as the inconsistency of her November 2001 opinion and Dr. Espinas's opinion with the medical record as a whole, it was solely within the province of the ALJ to make credibility determinations and resolve the conflicts. In his decision, the ALJ provided specific and legitimate reasons for rejecting Dr. Whitmore's and Dr. Espinas's opinions and those reasons were supported by substantial evidence in the record.

Finally, the ALJ's decision not to give any weight to the physical therapists' opinions was legally permissible. Such opinions are not considered medical sources and are not given controlling weight. See 20 C.F.R. § 1527(d)(2); Barret v. Barnhart, 355 F.3d 1065, 1067 (7th Cir. 2004). The ALJ sufficiently explained why he found their opinions unpersuasive.

**2.   Plaintiff's testimony**

The ALJ also properly determined that plaintiff's statements regarding her pain and other symptoms were not "particularly convincing or credible." Ordinary techniques of credibility evaluation apply to disability hearings. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is responsible for determining credibility, Andrews, 53 F.3d at 1039, and the ALJ may disregard self-serving statements made by claimants if he or she finds them to be incredible on other grounds. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ is not required to believe every allegation of disabling pain or else disability benefits would be available for the asking"). Relevant factors can include the plaintiff's engagement in activities inconsistent with a claim of disability, an unexplained or inadequately explained failure to seek treatment, or other ordinary methods of credibility determination. See Bunnell v. Sullivan, 947 F.2d

8

341, 346 (9th Cir.1991). When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence in the record. See Ceguerra v. Secretary of Health and Human Services, 933 F.2d 735, 738 (9th Cir. 1991).

"In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1991) analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The Cotton standard requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptoms. Id. "Once a claimant meets the Cotton test and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Id. at 1284.

The ALJ gave clear and convincing reasons for his rejection of plaintiff's testimony. He first noted the limited medical findings, that is, the fact that no physician or test had been able to identify a cause for plaintiff's complaints. See Fair v. Bowen, 885 F.2d at 601. He next identified her failure to receive any medical treatment from late 2001 through 2002 even though she contends her condition did not improve during this period. Finally, he observed that while she reported that her pain medication causes drowsiness and mental confusion, her medical records do not demonstrate that she ever reported such symptoms to her health care providers. These findings are sufficiently specific to counter plaintiff's contention that the ALJ committed legal error by finding plaintiff not credible.

**B.    Plaintiff's Depression**

The ALJ's finding that plaintiff suffered from, at most, mild depression, but that such depression was not "severe" was supported by substantial evidence. As the ALJ noted, plaintiff never sought any treatment for depression and the evidence did not support a finding that her depression impaired her ability to work. See Saelee, 94 F.3d at 522.

//

### C. Demands of Plaintiff's Past Relevant Work

Finally, plaintiff complains that the ALJ did not consider all the requirements of her past relevant work when he determined that she could perform such work; specifically, she argues that he ignored the state consulting physician's opinion that she is limited to only "occasional" fingering. (TR 208) As the Secretary points out, however, plaintiff's past relevant work, namely, as a systems administrator/technician, computer systems analyst, and data base administrator, requires only occasional reaching, handling, and fingering. See Dictionary of Occupational Titles, #169.167-030, 161.167-010. And, as previously explained, the ALJ's rejection of Dr. Whitmore's and Dr. Espinas's more severe fingering limitations was not in error.

The vocational expert's testimony does not contradict the ALJ's finding that plaintiff could perform her past relevant work. The expert did *not* testify that if plaintiff were limited to "occasional" fingering she could not perform her past relevant work. Both of the ALJ's hypotheticals assumed that the claimant was limited to no more than minimal fine finger manipulation with the left upper extremity. (TR 264, 267)

### IV. CONCLUSION

The ALJ did not commit legal error in reaching his decision. Rather, the ALJ made legitimate credibility determinations based on substantial evidence in the record and properly concluded that plaintiff is not disabled under the Act.

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and the defendant's cross-motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: June 30, 2005

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE